BRETT J. WILLIAMSON (SBN 145235)
bwilliamson@omm.com
NORA N. SALEM (SBN 307968)
nsalem@omm.com
GABE CASTILLO LAUGHTON (SBN 342581)
gcastillolaughton@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Plaintiff Micah's Way
(*additional counsel information on next page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MICAH'S WAY, a California non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SANTA ANA,<br><br>Defendant. | CASE NO. 8:23-CV-00183-DOC-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>DATE: June 5, 2023<br>TIME: 8:30 a.m.<br>COURTROOM: 10-A<br>JUDGE: The Hon. David O. Carter |

EDMOND M. CONNOR (SBN 65515)
econnor@businesslit.com
DOUGLAS A. HEDENKAMP (SBN 216487)
dhedenkamp@businesslit.com
TYLER PALMER (SBN 344040)
tpalmer@businesslit.com
**CONNOR, FLETCHER & HEDENKAMP LLP**
2211 Michelson Drive, Ste 1100
Irvine, CA 92612
Telephone: (949) 622-2600
Facsimile: (949) 622-2626

BROOKE WEITZMAN (SBN 301037)
bweitzman@eldrcenter.org
WILLIAM WISE (SBN 109468)
bwise@eldrcenter.org
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E. 17th St., Ste 110
Santa Ana, CA 92705
Telephone: (714) 617-5353

Attorneys for Plaintiff Micah's Way

# TABLE OF CONTENTS

**Page**

I.   Introduction .................................................................................. 1

II.  Statement of Facts ....................................................................... 2

   A.   MW Is A Faith-Based Non-Profit Located In Santa Ana That Operates A Resource Center For The Poor And The Homeless. ... 2

   B.   The City Administratively Cites MW And Denies Both Of MW's COO Applications. .............................................................. 3

   C.   MW Appeals the City's Administrative Citation And COO Denials And Obtains A Final Decision. .................................... 5

   D.   The City Affirms Its Prior Denial Of MW's COO Application. ... 5

III. Legal Standard ............................................................................. 6

IV.  Argument ...................................................................................... 7

   A.   The City Is Estopped From Arguing That MW's Food Distribution Is Not Religious Exercise Or That Its COO Denial Does Not Substantially Burden MW's Religious Exercise. ......... 7

   B.   The City Invites The Court To Decide Factual Disputes Inappropriate For A Motion To Dismiss. ................................... 8

   C.   The City's COO Denial Violates RLUIPA Because It Substantially Burdens MW's Religious Exercise. ..................... 9

      1.   MW Has Adequately Alleged That Its Services, Including Feeding The Poor, Constitute Religious Exercise. ......................................................................... 9

      2.   The City's COO Denial Substantially Burdens MW's Religious Exercise By Completely Eliminating MW's Ability To Distribute Food And Subjecting MW To Uncertainty, Delay, And Expense. ...................................... 12

   D.   MW's Complaint Has More Than Adequately Pled That The City Has Violated MW's First Amendment Rights. ................. 18

   E.   The City's COO Denial Is Not the Least Restrictive Means of Achieving Any Purported Compelling Interest. ...................... 21

V.   CONCLUSION ......................................................................... 21

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apache Stronghold v. U.S.*,
 38 F.4th 742 (9th Cir. 2022) ...............................................................22

*Barnett v. Gibson*,
 2021 WL 4352910 (C.D. Cal. Jul. 28 2021).......................................17

*Basurto v. Imperial Irrigation Dist.*,
 211 Cal.App.4th 866 (Cal. Ct. App. 2012) ............................................7

*Boy Scouts of Am. v. Dale*,
 530 U.S. 640 (2000).............................................................................21

*California-Nevada Ann. Conf. of the Methodist Church v. City and Cnty. of San*
 *Francisco*,
 74 F. Supp. 3d 1144 (N.D. Cal. 2014) .................................................24

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
 508 U.S. 520 (1993).............................................................................22

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
 915 F. Supp. 2d 574 (S.D.N.Y. 2013)..................................................19

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
 218 F. Supp. 2d 1203 (C.D. Cal. 2002) ......................................... 17, 22

*Eilrich v. Remas*,
 839 F.2d 630 (9th Cir. 1988)............................................................ 7, 15

*GreenCycle Paint, Inc., v. PaintCare, Inc.*,
 250 F.Supp.3d 438 (N.D. Cal. 2017) ................................................ 8, 13

*Greene v. Solano Cty. Jail*,
 515 F.3d 982 (9th Cir. 2008)........................................................... 15, 17

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*,
 456 F.3d 978 (9th Cir. 2006)...............................................................20

*Harbor Missionary Church Corp. v. City of San Buenaventura*,
 642 Fed. Appx. 726 (9th Cir. 2016).....................................................15

*Hartmann v. Cal. Dep't of Corrs. & Rehab.*,
 707 F.3d 1114 (9th Cir. 2013) ...............................................................9

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
 673 F.3d, 1059 (9th Cir. 2011)..............................................................16

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

# TABLE OF AUTHORITIES

**Page**

*Irshad Learning Ctr. v. Cnty. of DuPage*,
  804 F. Supp. 2d 697 (N.D. Ill. 2011) ................................................. 19

*LeBaron v. Spencer*,
  527 Fed. Appx. 25 (1st Cir. 2013) ................................................. 17

*Lemus v. Rite Aid Corp.*,
  613 F. Supp. 3d 1269 (C.D. Cal. 2022) ............................................. 6

*Lighthouse Cmty. Church of God v. City of Southfield*,
  2007 WL 30280 (E.D. Mich. Jan. 3, 2007) ......................................... 18

*McVicar v. Goodman Global, Inc.*,
  1 F. Supp. 3d 1044 (C.D. Cal. 2014) .............................................. 7

*Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*,
  692 F.3d 983 (9th Cir. 2012) ................................................. 14, 15

*Mintz v. Roman Catholic Bishop*,
  424 F. Supp. 2d 309 (D. Mass. 2006) .......................................... 12, 13

*Murphy v. Mo. Dep't of Corrs.*,
  372 F.3d 979 (8th Cir.2004) .................................................... 17

*New Harvest Christian Fellowship v. City of Salinas*,
  29 F.4th 596 (9th Cir. 2022) ................................................... 16

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
  513 F.3d 1038 (9th Cir. 2008) .................................................. 14

*POM Wonderful LLC v. Coca Cola Co.*,
  166 F. Supp. 3d 1085 (C.D. Cal. 2016) ........................................... 8

*San Jose Christian College v. City of Morgan Hill*,
  360 F.3d 1024 (9th Cir. 2004) .................................................. 20

*Scottish Rite Cathedral Association of Los Angeles v. City of Los Angeles*,
  156 Cal. App. 4th 108 (2007) .................................................. 12

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) .................................................. 10

*Tatung Co., Ltd. v. Shu Tze Hsu*,
  43 F. Supp. 3d 1036 (C.D. Cal. 2014) .......................................... 6, 14

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,
  672 F.3d 1160 (9th Cir. 2012) .................................................. 24

*U.S. v. Bensalem Twp., Pennsylvania*,
  220 F. Supp. 3d 615 (E.D. Pa. 2016) ............................................ 18

# TABLE OF AUTHORITIES

Page

*W. Presbyterian Church v. Bd. of Zoning Adjustment of D.C.*,
862 F. Supp. 538 (D.D.C. 1994) .............................................................11

*Waln v. Dysart Sch. Dist.*,
54 F.4th 1152 (9th Cir. 2022) ................................................................21

*Westchester Day School v. Village of Mamaroneck*,
379 F. Supp. 2d. 550 (S.D.N.Y. 2005).................................................18

**Statutes**

42 U.S.C. § 2000cc-5(7)(A) .....................................................................10

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

# I.      INTRODUCTION

Micah's Way ("MW") is an all-volunteer, non-profit and Christian-based organization in Santa Ana that renders necessary and potentially life-sustaining charitable services to impoverished, homeless, and disabled individuals, including by providing food and drink to the hungry who come through its doors for aid. MW's Complaint alleges in detail that the City of Santa Ana (the "City") has violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and MW's First Amendment rights by using the City's zoning code in an unrelenting and discriminatory selective enforcement campaign against MW's constitutionally protected religious exercise of providing food and drink to the poor and homeless persons who come to MW for services.  Specifically, MW alleges that the City—with no legitimate justification—has refused to issue a Certificate of Occupancy ("COO") to MW, effectively prohibiting MW from rendering any services at its current location, and has threatened to impose thousands of dollars of administrative fines as well as criminal prosecution against MW unless MW stops providing food or even a cup of water to the indigent who come to MW for help.

MW first sought relief from the City's actions by filing an administrative appeal, in which the Hearing Officer found that MW's food distribution activities constituted religious exercise, and that the City had failed to comply with RLUIPA by denying the COO.  Ignoring the preclusive effect of those findings, the City now seeks to dismiss MW's RLUIPA claim on the grounds that MW's activities on the property are not religious exercise and that the City's ban on food distribution and denial of MW's COO does not impose a substantial burden on MW's religious exercise.  The City's Motion to Dismiss, Dkt. 16 (the "MTD"), also plainly misapplies Rule 12(b)(6) by ignoring the litany of facts in the Complaint showing that the City's zoning code violates the First Amendment, and presenting contrary

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

fact-based arguments that do nothing to undermine the plausible inferences of illegality drawn from MW's allegations.  The City's arguments have no merit and the motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

**A.    MW Is A Faith-Based Non-Profit Located In Santa Ana That Operates A Resource Center For The Poor And The Homeless.**

Micah 6:8 calls on individuals to "act justly and to love mercy, and to walk humbly with your God."  Complaint, Dkt. 1 (the "Complaint") ¶ 5.  It is with this mandate in mind that MW, a faith-based non-profit, opened its doors in 2005.  *Id.* at ¶¶ 3, 5.  To effectuate its Christian mission, MW provides a variety of services to those in need.  These services include providing impoverished, downtrodden, and disabled individuals in Santa Ana, with, among other things (1) ID vouchers; (2) assistance in obtaining birth certificates; (3) mail collection; (4) hygiene materials; (5) clothing; (6) bus passes; (7) hotel/motel vouchers; (8) tuition assistance for children from poor families; (9) counseling; (10) delivery of food boxes to residences; (11) referrals to outreach services; and (12) onsite assistance for persons released at night from the Orange County jail.  *Id.* at ¶ 6.  MW also delivers canned food to needy individuals and families in Santa Ana and provides snacks and beverages such as water, coffee, doughnuts, small pastries, and prepackaged sandwiches to its office visitors.  *Id.* at ¶ 7.  MW's food distribution activities are an important part of its Christian ministry.  *Id.* at ¶ 42.

As a non-profit, relocating to an alternative location is not feasible for MW because alternative suitable properties are outside of MW's budget.  *Id.* at ¶ 39.  And there is no guarantee that a landlord would be willing to rent to MW knowing that MW serves the homeless.  *Id.*

**B.      The City Administratively Cites MW And Denies Both Of MW's COO Applications.**

In 2016, MW relocated to its current location in the Professional ("P") district.  *Id.* at ¶ 51.  Since moving, MW has obtained a business license annually and has made a number of improvements to its property, including building a drought-tolerant garden courtyard.  *Id.* at ¶¶ 41, 55, 57.  And shortly after moving, a City inspector assured MW that the City would mail MW a COO upon successfully passing an inspection, which MW did.  *Id.* at ¶ 55.

For five years, MW served its clients at its 4th Street location without incident.  In fact, during this period, the City's Code Enforcement Department Chief, Yvette Portugal, visited MW and told MW's President that MW was doing a "good job."  *Id.* at ¶¶ 82, 89.  In or about the summer of 2020, an organization unaffiliated with MW began operating a needle exchange in a converted residence at 1533 E. 4th Street, just two doors down from MW's Resource Center.  *Id.* at ¶ 9.  Then, in November 2021, the City unexpectedly cited MW for operating without a COO and for distributing food and beverages in alleged violation of the applicable zoning ordinance.  *Id.* at ¶ 10.  The citation threatened fines and other enforcement action if MW refused to comply.  *Id.* at ¶ 3.

Prior to issuing the administrative citation, then-Santa Ana Mayor Vincent Sarmiento and top City officials engaged in a concerted effort to target MW by, among other things, covertly surveilling MW with a stakeout and furtively photographing its clients, harassing and interrogating MW's clients, and taking the unprecedented step of directing City staff to administratively cite MW without an even basic inquiry into the legitimacy of the alleged neighborhood complaints lodged against MW.  *Id.* at ¶¶ 74–79.  For example, the Executive Director of the City's Planning and Building Agency—Alavaro Nunez—personally summoned one of the City's Code Enforcement Officers, Cesar Jimenez, to his office and

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

instructed Jimenez to administratively cite MW. *Id.* at ¶ 79.  Jimenez did so even though he admitted that he had no previous knowledge of any problems associated with any of MW's operations, had never laid eyes on MW's Resource Center, and did not conduct an investigation prior to issuing the citation. *Id.* at ¶ 81.

Shortly thereafter, the City and various members from the Saddleback View Neighborhood Association met in a public forum to discuss, among other things, complaints about "transients,"  MW and the needle exchange, and the City's efforts to "identify[] certain businesses [] to target with Code Enforcement so [they] won't be attractive to homeless people." *Id.* at ¶ 11.  As Mayor Sarmiento put it, MW was "not in the right location" and "shouldn't be right up against single-family homes and neighborhoods."  *Id.* at ¶¶ 11, 103.  The Mayor, who lives down the street from MW, justified his position with "personal experience" based on a break-in he experienced at his home.  *Id.* at ¶ 11.  In Mayor Sarmiento's eyes, the "goal" and "solution" to addressing the problem allegedly posed by the needle exchange and MW was being "open-minded about finding relocation."  *Id.*  Yet, the City has never provided any assurances that it would issue MW a COO in a new location.  *Id.* at ¶¶ 40, 106.

Seeking to comply with the City's zoning ordinance, MW applied for a COO in December 2021.  *Id.* at ¶ 12.  The City summarily denied the application, alleging that MW's proposed food distribution uses were inconsistent with those allowed in the P district.  *Id.*  MW submitted a second COO application on February 2, 2022.  *Id.*  Shortly thereafter, MW wrote to the City raising concerns that denying MW's COO application because MW distributes light snacks and refreshments would violate MW's statutory RLUIPA rights.  *Id.* at ¶ 22.  Ignoring MW's RLUIPA concerns, in June 2022, the City again denied MW's COO application citing its food distribution activities.  *Id.* at ¶ 12.

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

**C.     MW Appeals The City's Administrative Citation And COO Denials And Obtains A Final Decision.**

On June 16, 2022, MW appealed the City's COO denial and administrative citation. *Id.* at ¶ 14. The administrative appeal was heard over three days, during which MW and the City presented live and videotaped testimony from various witnesses, which included vigorous cross-examination, and hundreds of pages of exhibits. *Id.* at ¶¶ 14, 64. The Hearing Officer granted MW's appeal on the ground that, in denying MW's COO application, the City had failed to comply with RLUIPA. *Id.* at ¶ 14. The Hearing Officer held that the City failed "to present any evidence required to satisfy its burden of proof" under RLUIPA. *Id.* at ¶ 109.

**D.     The City Affirms Its Prior Denial Of MW's COO Application.**

After the Hearing Officer's decision in its favor, MW met with the City's attorneys to negotiate a path forward in light of RLUIPA. *Id.* at ¶ 112. MW drafted an addendum to its COO application delineating the parties' negotiated terms based on their meet and confer discussions. *Id.* Pursuant to the terms, MW would distribute food and beverages indoors and only in connection with its other services—consistent with its pre-pandemic procedures and with other businesses in the P district—in exchange for a COO. *Id.*

Despite MW's willing cooperation, the City inexplicably rejected the proposed addendum. *Id.* at ¶ 113. In late November 2022, after the City returned the addendum with revisions that struck all compromises discussed in the meet and confer, MW contacted the City via email asking whether it intended to compromise by finding the least restrictive means of enforcing the zoning ordinance in light of RLUIPA. *Id.* While MW waited for a response, it voluntarily limited its food distribution activities to be consistent with its proposed addendum, notwithstanding the City's failure to respond. *Id.* As a result, MW currently only

distributes food to its clients inside of its Resource Center in connection with non-food based services.  *Id.* at ¶ 29.

Then, on January 11, 2023, the City affirmed its denial of MW's COO application "after further consideration of the issues presented by RLUIPA" and made clear that it will "not entertain" approving MW's COO application unless MW unconditionally agreed to a new set of onerous conditions (the "2023 COO Conditions").  *Id.* at ¶ 114.  These conditions would prohibit MW from, among other things (1) providing food or beverages of any kind to any clients; (2) engaging in general outreach and resource services for poor and homeless individuals; and (3) "advertising, marketing, or engaging in other communication . . . related to the distribution or handing out of food and beverages at the resource center."  *Id.* at ¶ 32.  To date, the City continues to require a total ban on any food distribution by MW.   *Id.* at ¶¶ 31, 115.

## III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be dismissed only when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief.  *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1275–76 (C.D. Cal. 2022).  While a plaintiff must provide more than "labels and conclusions" or "formulaic" recitations of a cause of action, a court must accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff.  *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1057 (C.D. Cal. 2014).  Dismissal of a complaint that fails to state a claim without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.  *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1049 (C.D. Cal. 2014).

IV.   **ARGUMENT**

   A.   **The City Is Estopped From Arguing That MW's Food Distribution Is Not Religious Exercise Or That Its COO Denial Does Not Substantially Burden MW's Religious Exercise.**

   In the Ninth Circuit, a federal district court may give preclusive effect to administrative proceedings if such proceedings would be given collateral estoppel effect under California law. *See Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) ("Federal courts must give preclusive effect . . . to unreviewed administrative findings under federal common law rules of preclusion."). And municipal administrative proceedings are given preclusive effect under California law. *See Basurto v. Imperial Irrigation Dist.*, 211 Cal.App.4th 866, 878 (Cal. Ct. App. 2012) ("[C]ollateral estoppel . . . may be applied to the decision of an administrative agency when that agency is acting in a judicial or quasi-judicial capacity.").

   MW alleges that, prior to filing its Complaint, it exercised its rights under the City's Municipal Code to appeal the City's denial of MW's COO application. Complaint ¶ 14. The appeal resulted in an August 2022 administrative hearing that spanned three days and involved the admission of numerous exhibits, live testimony—including vigorous cross-examination—and videotaped testimonials by various witnesses that spanned *hundreds* of pages. *Id.* at ¶¶ 14, 64. The Hearing Officer issued a final decision on September 17, 2022.[1] *See* Decl. of Nora N. Salem In Support of Pl.'s Opp. to Def.'s Mot. to Dismiss Pls. Compl., Ex. A (the "Final Decision"). In denying that MW's food distribution is a religious

---

[1] The Hearing Officer's Final Decision is subject to judicial notice. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1100 (C.D. Cal. 2016) ("The records and reports of administrative bodies are proper subjects of judicial notice, as long as their authenticity or accuracy is not disputed.").

PLAINTIFF MW'S OPP. TO MTD
                                    NO. 8:23-CV-00183-DOC-KES

1   exercise and that the City's COO denial imposes a substantial burden, the City now

2   tries to relitigate the very same RLUIPA issues decided by the Hearing Officer.

3   Specifically, in its Final Decision, the Hearing Officer held that, while not itself a

4   church, MW is "clearly serving as an aspect of its Christian ministry."  Final

5   Decision at 8.  The Hearing Officer also held that the City failed to demonstrate

6   that the imposition of its "zoning burden" on MW's religious exercise was the least

7   restrictive means of furthering a compelling governmental interest.  *Id*.  In reaching

8   the burden shifting analysis under RLUIPA, the hearing officer necessarily

9   determined that MW had established a substantial burden or "zoning burden."  As

10  a matter of law, the City does not get a second bite at the apple on these issues that

11  were already squarely decided.

12      **B.**      **The City Invites The Court To Decide Factual Disputes**

13                  **Inappropriate For A Motion To Dismiss.**

14          The City's motion is also wholly improper because it introduces arguments

15  throughout based on disputed facts, and invites the Court to decide this case on the

16  merits notwithstanding the limited purpose of Rule 12(b)(6).  Factual disputes are,

17  of course, an inappropriate basis for seeking to dismiss a plaintiff's claim at the

18  pleading stage.  *See GreenCycle Paint, Inc.*, *v. PaintCare, Inc.*, 250 F. Supp. 3d

19  438, 448 n.3 (N.D. Cal. 2017) ("On a motion to dismiss, resolution of [] disputes of

20  fact is inappropriate.").

21          Notwithstanding this prohibition, the City bases its motion to dismiss on

22  purely factual disputes.  For example, the City alleges that MW uses its property as

23  an administrative office, *see infra* 9**,** that MW's food distribution activities are an

24  incidental use of its property, *see infra* 12–13, that MW is not precluded from

25  using other sites in the City, *see infra* 16–17, and that the City is not requiring MW

26  to abandon its current site*, see id.*  Indeed, the City's entire substantial burden

27  argument rests on a totality of the circumstances factual analysis that invites this

28

PLAINTIFF MW'S OPP. TO MTD
                                        NO. 8:23-CV-00183-DOC-KES

Court to ignore the motion to dismiss standard and instead decide fact disputes by making credibility determinations that are inappropriate at this stage.  The Court should decline to entertain the City's merits arguments throughout its motion.

**C.    The City's COO Denial Violates RLUIPA Because It Substantially Burdens MW's Religious Exercise.**

To the limited extent the City makes permissible legal arguments, they all fail based on clearly applicable authority.  To state a claim under RLUIPA, a plaintiff must plausibly allege that a governmental action (1) substantially burdens (2) its religious exercise.  *See Hartmann v. Cal. Dep't of Corrections & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013).

MW has done so here because it has plausibly alleged that its food distribution activities are a religious exercise mandated by its sincerely held Christian beliefs and that the City's actions have substantially burdened MW's religious exercise of distributing food to the needy.  Construing the facts in a light most favorable to MW, MW has met its pleading burden.

**1.    MW Has Adequately Alleged That Its Services, Including Feeding The Poor, Constitute Religious Exercise.**

The City does not dispute that MW is a religious assembly as referenced by RLUIPA.  Instead, the City argues that MW's services, and in particular its feeding of the poor, do not constitute "religious exercise," because MW's "use of its property as an administrative office is analogous to commercial activity in the sense it is not religious exercise."  *See* MTD at 9.  However, the City's attempt to mischaracterize MW's charitable services and aid to the poor as administrative services has no legal support whatsoever, and ignores the myriad facts alleged throughout MW's Complaint explaining that MW's services, including providing food and drink to the poor, fulfill MW's mandated Christian beliefs, which goes to the heart of the "religious exercise" analysis.  RLUIPA defines "religious exercise"

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). All sincere religious beliefs are protected. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) ("[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").

For example, the Complaint alleges that:

- MW's Christian ministry is performed by heeding and implementing the words of Jesus Christ: "For I was hungry and you gave me something to eat, I was thirsty and you gave me something to drink . . . .'" Complaint ¶ 4.
- "That famous biblical verse describes the 'Way,' i.e., the religious path that MW's members and volunteers have followed for the past 17 years in exercising and expressing their religious beliefs in rendering charitable services to impoverished, downtrodden, and disabled individuals in Santa Ana . . . ." *Id.* at ¶ 6.
- "MW gladly provides them with snack food items (muffins, pastries, fruit, etc.) and beverages (coffee, juice, water, etc.)." *Id.* at ¶ 7.
- "MW may also occasionally provide a few canned goods to someone who comes to the Resource Center in dire need of food . . . ." *Id.*

The City offers no authority whatsoever for the proposition that a Christian-based non-profit providing charitable services in furtherance of its religious beliefs amounts to commercial activity that is not protected by RLUIPA. Nor can it. Courts have recognized that acts of charity, including feeding the poor are "in every respect" a "religious activity and a form of worship." *See W. Presbyterian Church v. Bd. of Zoning Adjustment of D.C.*, 862 F. Supp. 538, 544 (D.D.C. 1994) ("[T]he Court finds the Church's feeding program to be religious conduct falling

within the protections of the First Amendment and the RFRA.").  Indeed, "the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions."  *Id.* (noting that Muslims, Hindus, Jews, and Christians all hold to such teachings).  Feeding the hungry is not a matter of personal choice for MW but, as alleged in the Complaint, an act of worship and a requirement of spiritual redemption that falls within RLUIPA's purview.  Complaint ¶ 25.

To support the notion that MW's services are not "religious exercise," the City relies primarily on *Scottish Rite Cathedral Association of Los Angeles v. City of Los Angeles*, which is readily distinguishable.  *See* 156 Cal. App. 4th 108, 118 (2007).  In *Scottish Rite*, SRCALA, a Masonic religious organization, leased its property to a purely commercial entity with no apparent relationship to Masonic practices, who then marketed and leased the cathedral as a venue for boxing events, among others.  *Id*. at 114, 120–21.  SRCALA had not conducted any Masonic functions at the cathedral since 1993 and it had no intention of doing so in the future.  *Id*. at 121.  However, SRCALA argued that RLUIPA extended protection to its tenant's nonreligious activities because they were necessary to financially support the cathedral's continued operation.  *Id*. at 119.  The court held that "a burden on a commercial enterprise used to fund a religious organization does not constitute a substantial burden on "religious exercise" within the meaning of RLUIPA."  *Id*.   In other words, a secular money-making endeavor does not become "religious exercise" purely because the money made would support religious exercise.  This is entirely different from the facts here:  MW *is* a faith-based entity, and it uses the subject property to provide free services to the poor and needy to fulfill its religious beliefs.  Thus, *Scottish Rite* is inapposite.

The City's reliance on *Mintz v. Roman Catholic Bishop* fares no better.  *See* 424 F. Supp. 2d 309, 318 (D. Mass. 2006).  In *Mintz*, while the court acknowledged that buildings of religious entities used for "secular activities" or to

generate revenue do not constitute religious exercise, the court found that the diocese's use of the subject building as "an office for religious education," "a meeting place for the parish counsel," a locus of "small gatherings related to church services," and "other functions" were consistent with religious exercise under RLUIPA.  *See id.* at 319.  Not only does *Mintz* not support the City's contention that MW's "use of its property as an administrative office is analogous to commercial activity," it actually supports the exact opposite position; a religious institution's building used for administrative purposes to indirectly support religious activities *is* considered religious exercise protected by RLUIPA.  *See id.* Thus, even if the City's false characterization of MW's activities on the property were accurate, *Mintz* stands against the City's position; it doesn't help it.  *See id.*

Construing the facts in the Complaint in a light most favorable to MW, MW's activities on its property—providing charitable services and needed sustenance to the poor in furtherance of its Christian beliefs—is religious exercise that falls under the protections of RLUIPA.

> **2.    The City's COO Denial Substantially Burdens MW's Religious Exercise By Completely Eliminating MW's Ability To Distribute Food And Subjecting MW To Uncertainty, Delay, And Expense.**

The City alleges that its denial of MW's COO does not substantially burden MW's religious exercise because "the food distribution . . . is nothing more than incidental and certainly not a primary use."  MTD at 12.  Not so.  As an initial matter, the City's argument rests on a factual dispute that has no place in a motion to dismiss.  *See GreenCycle,* 250 F. Supp. 3d at 448 n.3.  MW clearly alleges that it distributes food and beverages to those who visit its Resource Center to adhere to important religious mandates in the Bible to clothe the needy and to feed the hungry.  Complaint ¶¶ 4, 41.  Nowhere in its Complaint does MW allege that its

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

food distribution activities are incidental to its other services.  To the extent that any doubt exists about the City's assertion, at the motion to dismiss stage, the Court must construe the facts and draw all reasonable inferences in favor of MW.  *See Tatung*, 43 F. Supp. 3d at 1057.  For this reason alone, the City's motion to dismiss should be denied.  *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) ("Because the district court's [12(b)(6) dismissal] rested on factual findings rather than legal conclusions, we reverse the 12(b)(6) dismissal and remand [Plaintiff's] claim.").  Even taking the City's assertions at face value, the City cites no case law holding or even *suggesting* that an incidental use cannot be substantially burdened as a matter of law.

Even if the City's argument had merit (it does not), the City is estopped from alleging that MW's food distribution activities are an incidental use to its other activities.  *See Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993–997 (9th Cir. 2012) ("Judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal citation omitted).  During the administrative hearing, the City argued that MW's food distribution activities were a primary use.  Final Decision at 7.  Despite its position at the administrative hearing, the City now attempts to argue the exact opposite, that MW's food distribution activities are "clearly incidental."  *See* MTD at 13.  The City's tactics are a "textbook case" for applying the judicial estoppel doctrine.  *See Milton*, 692 F. 3d at 1000 (finding a "textbook case" of judicial estoppel where "[defendant's] representatives took one position on [defendant's] domicile [in prior proceedings] . . . and then changed their position when it was to their . . . advantage").  Moreover, in rendering his Final Decision, the Hearing Officer expressly found that MW's food distribution activities were not incidental to its other activities.  Final Decision at 7.  The City is therefore also collaterally

- 13 -

1    estopped from relitigating the Hearing Officer's finding that MW's food

2    distribution activity is a primary use.  *See Eilrich*, 839 F.2d at 632.

3          Further, to the extent the City uses the word incidental to mean "less

4    frequent," it confuses the nature of the substantial burden inquiry.  The substantial

5    burden inquiry is about the *effect* that the City's actions have on MW's ability to

6    distribute food, not about how often MW distributes food in relation to its other

7    services.  *See Harbor Missionary Church Corp. v. City of San Buenaventura*, 642

8    Fed. Appx. 726, 727–730 (9th Cir. 2016) (finding error in the district court's

9    conclusion that, because a church could continue to provide its traditional religious

10   services, prohibiting the church from providing "homeless services" was not a

11   substantial burden)*; see also Greene v. Solano Cty. Jail*, 515 F.3d 982, 987 (9th

12   Cir. 2008) (rejecting argument that governmental action prohibiting engagement in

13   one part of inmate's religious exercise did not violate RLUIPA because they could

14   still engage in all the other parts of their religious exercise).

15         Here, as alleged in the Complaint, the City's effect on MW's religious

16   exercise is significant.  A substantial burden is one that imposes a "significantly

17   great restriction or onus upon religious exercise."  *New Harvest Christian*

18   *Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022).  This is so where a

19   "governmental authority puts substantial pressure on an adherent to modify his

20   behavior and to violate his beliefs," which is precisely what the City is doing here.

21   *See Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d, 1059,

22   1067 (9th Cir. 2011) (internal marks and citations omitted).  MW alleges that the

23   City has engaged in "relentless efforts to pressure MW to modify its behavior and

24   to violate its religious beliefs by agreeing to the onerous, non-negotiable 2023

25   COO Conditions, including no longer providing food and beverages to poor and

26   homeless persons" and has issued "ongoing and ominous threats that MW will face

27

28

                                        - 14 -          PLAINTIFF MW'S OPP. TO MTD
                                                        NO. 8:23-CV-00183-DOC-KES

1  fines and criminal prosecution" if "MW does not stop exercising its religious

2  beliefs by providing food and beverages to the needy."  Complaint ¶ 119.

3       MW further alleges that it has modified its food distribution activities as a

4  result of the City's actions.  *Id.* at ¶¶ 29, 113.  The City ultimately placed MW in

5  the position of having to choose between "two unacceptable alternatives": either

6  (a) obtaining a COO for MW's Resource Center by agreeing to abandon its

7  religious beliefs in providing food and beverage to the needy or (b) remaining true

8  to its beliefs and risking potential fines and prosecution.  *Id.* at ¶ 38.  MW chose

9  the latter, and now lives with the fear and anxiety that the City will try to make

10 good on its threats.  *Id*. at ¶¶119, 124–25.  These facts adequately allege a

11 substantial burden.  *See Barnett v. Gibson*, No. CV 20-409-PSG (KS), 2021 WL

12 4352910, at *12 (C.D. Cal. Jul. 28 2021) ("Because Plaintiff believes Defendants'

13 policy directive forces him to choose between [] his sincerely held religious

14 beliefs, Plaintiff has alleged the policy imposes a substantial burden.") (denying

15 motion to dismiss).

16      Moreover, MW alleges that the City has totally banned MW from engaging

17 in any food distribution at its Resource Center, which the Ninth Circuit and its

18 sister circuits have had "little difficulty" finding substantially burdens religious

19 exercise.  Complaint ¶ 31; *see Greene*, 513 F.3d at 988 ("We have little difficulty

20 in concluding that an outright ban on a particular religious exercise is a substantial

21 burden on that religious exercise."); *see also LeBaron v. Spencer*, 527 Fed. Appx.

22 25, 29 (1st Cir. 2013) (same) (unpublished); *Murphy v. Mo. Dep't of Corrs.*, 372

23 F.3d 979, 988 (8th Cir.2004) (concluding that a ban on "communal worship"

24 substantially burdened an inmate's religious exercise).  The City's outright ban on

25 food distribution occurring on MW's property therefore constitutes a substantial

26 burden on MW's religious exercise.  *See also Cottonwood Christian Ctr. v.*

27 *Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1226 (C.D. Cal. 2002)

28

- 15 -

(finding that plaintiff alleged a substantial burden where it alleged that it was "unable to practice its religious beliefs in its current location."); *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d. 550, 555–56 (S.D.N.Y. 2005) ("[T]he renovations and construction covered by the [permit] [a]pplication are necessary for WDS to fulfill its religious mission and defendants denied [the] [a]pplication in its entirety.") (denying motion to dismiss).

The City further claims that its denial of MW's COO because of MW's food distribution activities does not substantially burden MW's religious exercise because "Plaintiff is not precluded from other sites in the City, nor is the City requiring Plaintiff to abandon its current site" and that "Plaintiff's mere inconvenience would not amount to substantial uncertainty, delay, or expense" as a result. *See* MTD at 12–13. But in its Complaint, MW alleges that the City denied MW's COO with the predetermined "goal" of forcing MW to relocate to another location because Mayor Sarmiento believed that MW was "not in the right location." Complaint ¶ 103. Moreover, MW's Complaint alleges that relocating to another site in which to engage in its religious exercise is not feasible because MW has limited financial resources and because alternative properties suitable for its Christian ministry are outside of MW's budget. *Id.* at ¶¶ 39–41. The lack of ready alternatives in which MW can engage in its religious exercise imposes a substantial burden. *See U.S. v. Bensalem Twp., Pennsylvania*, 220 F. Supp. 3d 615, 621 (E.D. Pa. 2016) (finding that plaintiff alleged a substantial burden where it "allege[d] there [were] no other properties in Bensalem for the Bensalem Masjid to use") (denying motion to dismiss); *see also Lighthouse Cmty. Church of God v. City of Southfield*, No. 05-40220, 2007 WL 30280, at *9 (E.D. Mich. Jan. 3, 2007) (finding denial of COO was a substantial burden over argument that church was not precluded from other sites in the city because selling its current building and searching for another was not a mere inconvenience to Plaintiff). At the same

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

time, MW alleges that it will incur a large monetary loss if forced to move because it has invested significant time and expense in making improvements to its current location.  Complaint ¶¶ 39–41.  MW additionally faces uncertainty if forced to relocate because of the "impossible task" of finding a location in "which a property owner would be willing to rent to MW, knowing that MW would be serving homeless persons at that location." *Id.* at ¶ 39.  And, even if MW found another suitable location, "there is no guarantee that . . . the City would agree to provide a COO to MW in that new location," especially because the City has not "ever provided assurances to MW that, if it did move, the City would provide it with a COO for that new location." *Id.* at ¶¶ 40, 106.  MW's religious exercise is substantially burdened by being subjected to this uncertainty and delay.  *See Irshad Learning Ctr. v. Cnty. of DuPage*, 804 F. Supp. 2d 697, 716 (N.D. Ill. 2011) (denying motion to dismiss where Plaintiff "allege[d] that the 'delay, uncertainty, and expense' that have accompanied its efforts in seeking approval of its conditional use application impose a substantial burden"); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 633 (S.D.N.Y. 2013) (substantial burden sufficiently alleged where plaintiff alleged that alternative options "would be cumbersome and, given the hostility of Defendants, fraught with indefinite delay and uncertainty") (denying motion to dismiss).

Lastly, the City makes the unsupported assertion that its COO denial does not substantially burden MW's religious exercise because "the City did not act arbitrarily when it was willing to issue Plaintiff a COO if it ceases its food activity."  *See* MTD at 13.  But the Complaint alleges that the City acted arbitrarily and unlawfully by denying MW's second COO application because MW was engaged in food distribution activities.  Complaint ¶ 12.  Moreover, MW alleges that the City inexplicably rejected MW's proposed addendum delineating the

parties' negotiated terms after the Hearing Officer remanded MW's COO application, despite MW's willing cooperation. *Id.* at ¶ 113. These facts establish that the City acted arbitrarily in denying MW's COO application. *See Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 991 (9th Cir. 2006) (holding that CUP denial was arbitrary where "plaintiff agreed to a host of conditions [] to allay the County's concerns" but County did not explain "why any [] mitigation conditions were inadequate" or "suggest[] additional conditions[]").

### D. MW's Complaint Has More Than Adequately Pled That The City Has Violated MW's First Amendment Rights.

In seeking dismissal of MW's First Amendment claim, the City cites *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1030 (9th Cir. 2004)[2] to argue that MW has not stated a claim under the First Amendment. MTD at 15. "The City's zoning code is neutral, has general applicability and does 'not aim to infringe upon or restrict' the religious practices of Plaintiff " it says.[3] *Id.* However, at the motion to dismiss stage, construing the facts in a light most

[2] The City argues, "Plaintiff has not stated allegations, even if taken as true, that would constitute a violation of RLUIPA, and therefore its First Amendment claim must fail as well," citing to *Scottish Rite*, a summary judgement case. MTD at 14. The City again invites an inappropriate merits analysis. Further, the City misstates the holding in *Scottish Rite*; the court there did not reach the constitutional claim because the religious exercise held by SRCALA did not confer protection on the secular tenant, LASRC, *not* because no RLUIPA burden was found. *Scottish Rite* is procedurally and factually distinguishable and is inapposite.

[3] The City ignores MW's specific allegations about how the 2023 COO Conditions impermissibly infringe on MW's freedom of association and right of free speech in violation of the First Amendment. Complaint ¶¶ 131, 134. As the Supreme Court stated in *Boy Scouts of Am. v. Dale*, the First Amendment includes the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *See* 530 U.S. 640, 647 (2000). Any arguments as to free speech and association are waived.

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

favorable to Plaintiff, MW has more than sufficiently stated a claim under the First Amendment.

To plead a Free Exercise claim, a plaintiff must "show[ ] that a government entity has burdened [] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (citation omitted).  General applicability requires, among other things, that the laws be enforced evenhandedly.  *See id.*; *see also Cottonwood Christian Ctr.*, 218 F. Supp. 2d at 1224–25 ("The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination.  The Clause forbids subtle departures from neutrality, and covert suppression of particular religious beliefs."); *Apache Stronghold v. U.S.*, 38 F.4th 742, 770 (9th Cir. 2022) ("[A] law is not 'generally applicable' if the law 'impose[s] burdens only on conduct motivated by religious belief' in a 'selective manner.'").  The government's motive may be determined both from direct and circumstantial evidence.  *See Cottonwood Christian Ctr.*, 218 F. Supp. 2d at 1225.  A law that "is not neutral or not of general application [] must undergo the most rigorous of scrutiny.  To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

The City baldly proclaims that "Plaintiff has failed to allege any facts that the City's prohibition on food distribution is being applied in a selective matter." MTD at 15.  In so doing, the City turns a blind eye to the more than 40 pages in the Complaint showing that the City's selective and prejudicial enforcement of its zoning ordinance was intended to suppress MW's religious exercise and association with the poor.  For example, the Complaint alleges that, even though MW has modified its food distribution activities so that it is now only "extending

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

the same hospitality to its clients that other businesses in the Professional district customarily extend . . . to the clients or customers who visit their offices," the City continues to inexplicably refuse to issue MW a COO and to demand that MW stop distributing any food or beverages to its clients.  Complaint ¶¶ 30, 112–13.  The alleged complaints animating the City's actions, which were blatantly focused on "the class or type of people that were being served by MW" underscore the selective enforcement, as "virtually every one of the complaints received by the City" against MW takes issue with MW's clients as being "alleged transients and homeless persons, as opposed to white-collar patrons."  *Id.* at ¶ 20.

MW further alleges that the Mayor and top City officials engaged in a concerted effort to target MW by, among other things, covertly surveilling MW, harassing MW's clients for doing nothing other than consuming pastries and coffee on a public sidewalk, and engaging in the unprecedented step of directing City staff to administratively cite MW without an even basic inquiry into the legitimacy of the alleged neighborhood complaints lodged against MW.  *Id.* at ¶¶ 74–79.  Again, prior to administratively citing MW, the Executive Director of the City's Planning and Building Agency personally summoned one of the City's Code Enforcement Officers to his office and instructed them to administratively cite MW.  *Id.* at ¶ 79.  The officer did so even though he admitted to having no previous knowledge of MW or of any problems associated with any of MW's operations and never having even laid eyes on MW's Resource Center.  *Id.* at ¶ 81.  The City did not even try to hide its discriminatory and selective zoning enforcement.  At a public community meeting that occurred on November 30, 2021, City staff (including Mayor Sarmiento) openly admitted to residents of the Saddleback View Neighborhood Association that the City was "*target[ing]*" organizations such as MW "with Code Enforcement so [they] won't be attractive to *homeless people*."  *Id.* at ¶ 11.  And as described above, the Complaint alleges in

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

detail that the City's actions have burdened MW's sincere religious practice of distributing food, which is inextricably bound up with providing aid to the poor, homeless, and indigent.  *See supra* C1–2.

The City's pattern and practice of discrimination against MW are sufficient to establish that the City's zoning code is not neutral or generally applicable and that MW has stated a First Amendment claim.  *See California-Nevada Ann. Conf. of the Methodist Church v. City and Cnty. of San Francisco*, 74 F. Supp. 3d 1144, 1161 (N.D. Cal. 2014) (Church stated a First Amendment claim where it alleged that the City engaged in a pattern and practice of discrimination against the Church that prevented it from, among other things, "feed[ing] the poor" and "provid[ing] shelter for the homeless").

## E.  The City's COO Denial Is Not the Least Restrictive Means of Achieving Any Purported Compelling Interest.

In arguing for dismissal of MW's RLUIPA claim, the City hangs its hat entirely on its mistaken belief that MW has failed to allege a substantial burden or that the City's zoning ordinance is enforced in a selective manner.  *See* MTD at 12–16.  The City does not make any arguments related to whether its actions are the least restrictive means of achieving a compelling governmental interest, *see id.*, even though the Complaint alleges that the City has not and cannot demonstrate that its actions to prevent MW from exercising its religious beliefs on "take it or leave it terms" are the least restrictive means of advancing a compelling governmental interest.  Complaint ¶¶ 120–21, 135.  The City has therefore waived these arguments.  *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.").

## V.  CONCLUSION

The City's motion to dismiss should be denied.

Dated: May 8, 2023

BY: */s/ Nora N. Salem*
     Nora N. Salem

     Brett J. Williamson
     Gabe Castillo Laughton
     **O'MELVENY & MYERS LLP**

     Edmond M. Connor
     Douglas A. Hedenkamp
     Tyler Palmer
     **CONNOR, FLETCHER & HEDENKAMP LLP**

     Brooke Weitzman
     William Wise
     **ELDER LAW AND DISABILITY RIGHTS CENTER**

     Attorneys for Plaintiff Micah's Way

PLAINTIFF MW'S OPP. TO MTD
NO. 8:23-CV-00183-DOC-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Micah's Way, certifies that this brief contains 6,852 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 8, 2023              Respectfully submitted,

                               O'MELVENY & MYERS

                               BY: */s/ Nora N. Salem*
                                      Nora N. Salem

                                      Brett J. Williamson
                                      Gabe Castillo Laughton
                                      **O'MELVENY & MYERS LLP**

                                      Edmond M. Connor
                                      Douglas A. Hedenkamp
                                      Tyler Palmer
                                      **CONNOR, FLETCHER &
                                      HEDENKAMP LLP**

                                      Brooke Weitzman
                                      William Wise
                                      **ELDER LAW AND DISABILITY
                                      RIGHTS CENTER**

                                      Attorneys for Plaintiff Micah's Way

PLAINTIFF MW'S OPP. TO MTD
                               NO. 8:23-CV-00183-DOC-KES