KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
CARRIE PAGNUCCO, Acting Deputy Chief
NOAH SACKS, Trial Attorney
TERRENCE MANGAN, Trial Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
        150 M. Street NE
        Washington, D.C.  20001
        Telephone: (202) 531-5995
        Email: terrence.mangan2@usdoj.gov
E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
RICHARD M. PARK
Assistant United States Attorney
Chief, Civil Rights Section, Civil Division
MATTHEW NICKELL (Cal. Bar No. 304828)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-8805, Facsimile: (213) 894-7819
        Email: matthew.nickell@usdoj.gov
Attorneys for
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MICAH'S WAY, | Case No. 8:23-cv-00183-DOC-KES |
| Plaintiff, | **STATEMENT OF INTEREST IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| CITY OF SANTA ANA, | Date: June 5, 2023 |
| Defendant. | Time: 8:30 a.m. |
| | Courtroom: 10-A |
| | Hon. David O. Carter |
| | United States District Judge |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ 2

I.   STATEMENT OF INTEREST OF THE UNITED STATES ...................................... 4

II.  BACKGROUND ......................................................................... 4

III. ARGUMENT ........................................................................... 7

   A.   MW plausibly alleged that its distribution of food and drinks to homeless individuals is "religious exercise" under RLUIPA. ........................................... 7

   B.   MW plausibly alleged that the City's complete refusal to allow it to provide food or drinks to homeless individuals "imposes a substantial burden" on its religious exercise under RLUIPA. ............................................................ 12

IV. CONCLUSION ......................................................................... 15

CERTIFICATE OF COMPLIANCE .................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Our Lady of Peace v. City of San Diego*, No. 09CV962-WQH-AJB, 2010 WL 1329014 (S.D. Cal. Apr. 1, 2010) ..................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 4

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 4

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ................................................................ 7, 9

*Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570 (2d. Cir. 2002) ......... 8

*First Lutheran Church v. City of St. Paul*, 326 F.Supp.3d 745 (D. Minn. 2018) ....... 11, 14

*Greene v. Solano Cnty. Jail*, 513 F.3d 982 (9th Cir. 2008) ........................................ 7, 13

*Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006) .... 12, 13, 15

*Harbor Missionary Church Corp. v. City of San Buenaventura,* 642 F.App'x 726 (9th Cir. 2016) ................................................................................................................ 8, 9

*Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059 (9th Cir. 2011) ......................................................................................................................... 10, 14

*Johnson v. Baker*, 23 F.4th 1209 (9th Cir. 2022) ..................................................... 10, 13

*Mintz v. Roman Catholic Bishop*, 424 F.Supp.2d 309 (D. Mass. 2006) ........................... 11

*Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023) ...................................................... 14

*New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596 (9th Cir. 2022) ... 12, 14

*San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004) .... 12, 14

*Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles*, 156 Cal.App.4th 108 (Cal. App. 2007) ............................................................................................. 11, 12

*Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) .............. 12

*W. Presbyterian Church v. Bd. of Zoning Adjustment of D.C.*, 862 F.Supp. 538 (D.D.C. 1994) ................................................................................................................ 8, 11-12

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) .................................................. 13

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ...................................................................... 13

*World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531 (7th Cir. 2009).......8, 11, 12

**Statutes**

28 U.S.C. § 517 ....................................................................................................4

42 U.S.C. § 2000cc ..............................................................................................7

42 U.S.C. § 2000cc-2 ..........................................................................................4

42 U.S.C. § 2000cc-3 ..........................................................................................8

42 U.S.C. § 2000cc-5 ..............................................................................7, 9, 13

42 U.S.C. §§ 2000cc *et seq.* ..............................................................................4

**Legislative History**

146 Cong. Rec. S6689 (daily ed. July 13, 2000) ................................................8

## I.    STATEMENT OF INTEREST OF THE UNITED STATES

Pursuant to 28 U.S.C. § 517, the United States respectfully submits this Statement of Interest to the Court relating to the Defendant City of Santa Ana's ("City") Motion to Dismiss ("Motion" or "Mot."), ECF No. 16.[1]  This case raises important questions involving the application of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*.  In addition to creating a private cause of action, RLUIPA charges the Attorney General with enforcing its provisions.  *See* 42 U.S.C. § 2000cc-2(f).  Because this litigation implicates the proper interpretation and application of RLUIPA, the United States has a strong interest in the issues raised by the City's Motion and believes that its participation will aid the Court.  The scope of the United States' Statement of Interest is limited to what constitutes religious exercise and whether Plaintiff has sufficiently alleged a substantial burden claim under RLUIPA.  As Plaintiff has plausibly alleged a violation of RLUIPA, the City's Motion to Dismiss Plaintiff's RLUIPA claim should be denied.

## II.    BACKGROUND

According to the Complaint ("Compl."), ECF No. 1, Micah's Way ("MW"), is a "faith-based organization" named after the "'Micah Mandate' set forth in Micah 6:8 in the Bible."[2]  Compl. ¶5.  The "Micah Mandate" requires followers "[t]o act justly, and to love mercy, and to walk humbly with your God."  *Id*.  MW describes itself as a

---

[1]  Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

[2]  A court must, on a motion to dismiss, assume the truth of the well-pleaded allegations of the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)).  For this reason, the United States treats the Plaintiff's allegations as true in this Statement of Interest.  The United States takes no position on the merits of Plaintiff's claims, including whether the City has violated RLUIPA.

4

"Christian ministry" that follows the teachings of Jesus Christ, and particularly the words of Matthew 25:35-40, which state, "For I was hungry and you gave me something to eat, I was thirsty and you gave me something to drink . . ." *Id.* ¶4.  Consistent with this mandate, MW provides charitable services to homeless individuals, including by providing light food and beverages, to persons who come to their Resource Center.  *Id.* ¶7.  In particular, MW believes it "has a religious duty to help the homeless that come to it . . . including by providing a cup of coffee and a muffin if a client is hungry." *Id.* ¶27.

Since early 2016, MW's Resource Center has been located at 1517 East Fourth Street in Santa Ana, California.  Compl. ¶51.  MW describes this as an "excellent location" because it is only half a mile from the Department of Motor Vehicles ("DMV"), facilitating its ID voucher services.[3]  *Id.* ¶52.  MW has paid yearly fees to the City for a business license, but does not have a Certificate of Occupancy ("COO").  *Id.* ¶¶10, 54-56.

In early 2020, MW began providing snacks and beverages outdoors in response to the COVID-19 pandemic.  Compl. ¶57.  Around this same time, a needle exchange program operated by the American Addiction Institute began operations two doors down from MW.  The exchange was associated with increased neighborhood complaints of drug use, trespassing, littering, and loitering.  *Id.* ¶¶58-60, 64-67.

In November 2021, the City's mayor received a complaint "begging" him to "do something about the homeless houses" after individuals "dump[ed] trash and bleach" on a local resident's door.  Compl. ¶64.  In response, the mayor instructed various city departments "to devise whatever measures they could come up with to compel MW and the Needle Exchange to move out of the 4th Street neighborhood or, at the very least, to severely curtail their operations."  *Id.* ¶¶67, 68, 74.

---

[3]  MW assists homeless persons fill out ID vouchers, which allows them to obtain a free California photo ID from the DMV.  MW also assists homeless persons in obtaining birth certificates so that they can qualify for various government benefits, including housing assistance.  Compl. ¶52.

5

On November 29, 2021, the City issued an Administrative Citation to MW for "engaging in unpermitted food distribution" and "conducting business operations without a valid COO." Compl. ¶79. The following day, the City held a community meeting regarding its "enforcement efforts" against MW. *Id.* ¶¶98-104. The mayor stated that MW and the needle exchange were "not in the right location," and that a solution was possible only if they were "open-minded about finding relocation." *Id.* ¶¶103-04. His intention was "to correct what's happening here, but also prevent it from happening anyplace else in the City." *Id.* ¶102.

MW applied for a COO in December 2021, but was denied in January 2022. Compl. ¶12. MW reapplied in February 2022, but was denied again "on the grounds that MW was engaged in food distribution activities that were allegedly not permitted in the Professional district." *Id.* In March 2022, MW informed the City that its refusal to grant a COO permitting it to provide food and beverages to poor and homeless individuals was a violation of RLUIPA. *Id.* ¶107. On June 7, 2022, the City informed MW that it would "take all appropriate action," including the "issuance of administrative fines, criminal prosecution and/or civil remedies such as injunctions and penalties," if MW continued operating without a COO. *Id.* ¶13.

MW administratively appealed the City's second COO denial in August 2022. Compl. ¶14. Following a hearing, the administrative hearing officer concluded that the City had failed to adequately "address the RLUIPA issues." *Id.* ¶16. MW subsequently met with City officials and offered to return to its pre-pandemic practice of providing food and drink indoors rather than from its garden courtyard. *Id.* ¶112. However, the City rejected this offer. *Id.* ¶113. Regardless, MW reverted to its pre-pandemic procedures and currently only distributes food and beverages inside its Resource Center. *Id.* ¶29. Although MW informed the City in writing of this policy change, on January 11, 2023, the City notified MW that it would not permit MW to "provid[e] any food or beverages of any kind to any clients or any other members of the public (whether rich or poor), either inside or outside MW's Resource Center." *Id.* ¶¶31-32, 35. Accordingly,

MW remains "subject to potential fines, injunctions, and criminal prosecution" from the City. *Id.* ¶31; *see also id.* ¶13.

On January 30, 2023, MW filed this suit, alleging *inter alia* that the City's actions violated RLUIPA by imposing a substantial burden on its religious exercise.  Compl. ¶¶116-27.  On March 22, 2023, the City moved to dismiss MW's claims.  Mot. at 2. Specifically, the City argues that MW's "use of its property, as alleged in the Complaint, does not constitute a religious exercise under RLUIPA," and that its denial of MW's COO application does not impose a substantial burden on MW's religious exercise because food and drink distribution is merely "incidental" to MW's practices.  *Id.*

## III.   ARGUMENT

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution" unless the government demonstrates that the imposition of that burden is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).  Here, MW has plausibly alleged a violation of RLUIPA because its Complaint asserts that (1) providing food and drink to homeless individuals is a part of its "religious exercise," and (2) the City's outright ban on this practice "imposes a substantial burden on its religious exercise."

### A.   MW plausibly alleged that its distribution of food and drinks to homeless individuals is "religious exercise" under RLUIPA.

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  This definition is deliberately far-reaching, as evidenced by Congress' intent to distinguish RLUIPA "from traditional First Amendment jurisprudence" by "expand[ing] the reach of the protection to include 'any religious exercise.'"  *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005)).  Indeed, RLUIPA itself demands that it be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this

7

chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).

Consistent with this broad mandate, courts have routinely found that providing charity to homeless individuals—including by offering food and drink—can constitute "religious exercise" under RLUIPA.  *See, e.g.*, *Harbor Missionary Church Corp. v. City of San Buenaventura,* 642 F. App'x 726, 727-29 (9th Cir. 2016) (finding that the church's homeless ministry, which included offering food, was "an integral part of its religious exercise"); *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 537 (7th Cir. 2009) (holding that the City's denial of a permit impeded the church's "religious mission of providing living facilities to homeless and other needy people"); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574-75 (2d. Cir. 2002) (finding that operating a homeless shelter constitutes religious exercise); *see also W. Presbyterian Church v. Bd. of Zoning Adjustment of D.C.*, 862 F. Supp. 538, 544 (D.D.C. 1994) (noting that, in the Religious Freedom Restoration Act context, the "concept of acts of charity as an essential part of religious worship is a central tenet of all major religions," including by providing "clothing for the naked, *food for the hungry*, and benevolence to the needy") (emphasis added).[4]

Here, MW alleges that providing food and drink to poor and homeless individuals is an integral part of its religious exercise.  MW asserts that it is a Christian "faith-based organization" named after the "Micah Mandate," as set forth in the Bible.  Compl. ¶5. Feeding homeless persons is part of its "Christian ministry."  *Id*. ¶¶4, 19, 26, 42-43. MW feeds homeless persons because it believes it "has a religious duty to help the homeless that come to it . . . including by providing a cup of coffee and a muffin if a client is hungry."  *Id*. ¶27.  This belief is rooted in "heeding and implementing the

---

[4]  These rulings are consistent with RLUIPA's legislative intent, which aimed to protect organizations like MW that exercise their faith through charity, including by distributing food to homeless individuals.  During RLUIPA's legislative process, a sponsoring senator specifically cited a "meals program for the homeless and the working poor" as a type of land use that should receive protection as religious exercise.  *See* 146 Cong. Rec. S6689 (daily ed. July 13, 2000) (statement of Sen. Kennedy).

1   following words of Jesus Christ: 'For I was hungry and you gave me something to eat, I

2   was thirsty and you gave me something to drink' . . . . (Matthew 25:35-40)." *Id.* ¶4.

3   Indeed, MW "takes great solace in the fact that providing charitable assistance to persons

4   in need is a practice that is embraced by every major religion in the world," and MW

5   believes it is doing "God's work" by "providing food to the hungry, drink to the thirsty,

6   clothing to the needy, and shelter to the homeless." *Id.* ¶42.

7       This type of faith-based outreach is akin to *Harbor Missionary Church Corp,*

8   where the Ninth Circuit found that a city's denial of a conditional use permit, which

9   prevented the plaintiff "from conducting its homeless ministry, an integral part of its

10  religion," violated RLUIPA's substantial burden provision.  642 Fed. App'x at 729.

11  Similar to MW, the Church in *Harbor Missionary* used its property to provide "basic

12  needs to the City's homeless men and women," such as food, clothing, showers, and

13  counseling.  *Id.* at 727.  The Church cited "the Bible at Matthew 25:34-46" as a source

14  for its "belief that its homeless ministry is part of its religious duty to feed the hungry

15  and clothe the naked," and that "sharing meals with homeless men and women—when

16  done within the walls of the Church under a religious mandate—constitute[d] sacred

17  duties." *Id.* at 728-29.  MW's religious beliefs are similarly rooted in religious text.

18  Compl. ¶¶4, 25.  And like *Harbor Missionary*, MW's practice of distributing food and

19  beverages to people in need is an act of religious exercise.

20      The City claims that MW's food and drink distribution is not religious exercise

21  because it is "merely an incidental use of *minor significance*."  Mot. at 10 (emphasis

22  added).  But MW's Complaint makes clear that food and drink distribution is an integral

23  part of its religious exercise and not of "minor significance."  Compl. ¶¶4, 27, 42.

24  Moreover, the City's argument runs counter to the plain language of RLUIPA, which

25  protects *any* religious exercise, "whether or not compelled by, or central to, a system of

26  religious belief."  42 U.S.C. § 2000cc-5(7)(A) .  In other words, the centrality or

27  significance of the belief or conduct at issue does not dictate whether it is "religious

28  exercise" under RLUIPA.  *See Cutter*, 544 U.S. at 725 n.13 (noting that RLUIPA "bars

9

inquiry into whether a particular belief or practice is 'central' to" an individual's religion).  Indeed, in *Johnson v. Baker*, the Ninth Circuit rejected a similar argument, finding that the defendant "grossly miss[ed] the mark" by insinuating that an incarcerated individual's particular religious practice—using scented oils before prayer—was "not *really that important* to his worship practice."  23 F.4th 1209, 1215 (9th Cir. 2022) (emphasis in original).  *Johnson* also emphasized that a plaintiff need only demonstrate that a "particular facet" of his religious practice has been burdened under RLUIPA, and that "it makes no difference" that a plaintiff may still practice his "religion as a whole" under the government's restrictions.  *Id*. at 1214-15.  As alleged in its Complaint, MW's feeding homeless individuals is an important part of its ministry and is, at the very least, a "particular facet" of its religious expression.  Compl. ¶¶4, 7-8, 27, 31, 38-39.  Accordingly, the City cannot prohibit MW's distribution of food and drink by erroneously branding it of "minor significance" to its overall religious practice.

Citing to MW's many *other* services, such as providing ID vouchers and hygiene products, the City argues that MW's operations "are purely administrative and are not religious in nature."  Mot. at 10.  However, as the City acknowledges in its motion, it denied MW's COO because MW distributed food and drink, not because it provided ID vouchers or hygiene products.  Mot. at 4.  While MW's other activities are also part of its religious mission, Compl. ¶¶ 6, 52, they are not at issue in this litigation.  Rather, the conduct in question is providing food and drink to the needy, and the City's Motion simply ignores the Complaint's many allegations that MW has a "religious duty" to feed homeless persons.  *See, e.g., id*. ¶27; *see also Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1069 (9th Cir. 2011) (holding that district court may not reject the plaintiff's "characterization of its core beliefs").

Moreover, the premise of the City's argument—that certain activities are intrinsically secular and therefore not religious exercise—has been repeatedly rejected by courts.  For example, in *World Outreach Conf. Ctr.*, the Seventh Circuit found that "even the recreational and other nonreligious services provided at the community center

10

1   are integral to the World Outreach's religious mission . . . . Souls aren't saved just in
2   church buildings." 591 F.3d at 535; *see also First Lutheran Church v. City of St. Paul*,
3   326 F.Supp.3d 745, 753, 761 (D. Minn. 2018) (finding that Church's nonprofit day-
4   shelter and community center focused on "providing hospitality and practical assistance
5   to the disadvantaged, homeless, or lonely" is "a form of . . . religious exercise").[5]

6        Cases cited by the City reinforce the point that religious exercise is not limited to
7   traditional houses of worship and can include seemingly lay or "administrative" pursuits.
8   For example, in *Scottish Rite Cathedral Association of Los Angeles*, the court
9   acknowledged that RLUIPA protections have "been applied to activities as divergent as
10  religiously affiliated schools . . . nonprofit hospitals . . . and faith-based crisis centers."
11  156 Cal.App.4th at 118.  And in *Mintz v. Roman Catholic Bishop*, the court found that a
12  proposed "parish center," which would "house an office for religious education and
13  would serve as a meeting place for the parish council," fell "well within the definition of
14  'religious exercise.'"  424 F.Supp.2d 309, 319 (D. Mass. 2006).  Undoubtedly, operating
15  meeting places, schools, offices, hospitals, and crisis centers requires significant amounts
16  of administrative work; nevertheless, these uses constitute religious exercise when
17  operated for a religious purpose.  And considering that offering food to the hungry
18  cannot reasonably be mistaken as a rote administrative task, but rather has spiritual
19  foundations and is a "central tenet of all major religions," MW's practice of feeding
20  homeless individuals is unquestionably religious exercise.  *See W. Presbyterian Church*,

21

22  _____
    [5] Some courts have found that when a religious organization engages in purely
23  commercial conduct, like leasing its property to a commercial enterprise, that activity is
    not "religious exercise" for the purposes of RLUIPA.  *See, e.g., Scot. Rite Cathedral
24  Ass'n of Los Angeles v. City of Los Angeles*, 156 Cal.App.4th 108, 118-120 (Cal. App.
    2007) (finding that City's actions in prohibiting masonic temple from renting its building
25  to for-profit commercial activities, including a boxing match, did not infringe on
    temple's religious exercise).  However, here, the City does not contend that the
26  challenged conduct—feeding homeless persons—is commercial or that MW somehow
    financially profits from it.  In fact, the City concedes that "Plaintiff is not operating a
27  commercial use."  Mot. at 9.
28

862 F. Supp. at 544) (noting that one of the "five Pillars of Islam" includes giving "alms to the poor"; one of Hinduism's "five daily obligations of worship" includes "giving food or aid to the poor"; and that religious worship in Judaism includes tendering "food for the hungry[] and benevolence to the needy").

**B.    MW plausibly alleged that the City's complete refusal to allow it to provide food or drinks to homeless individuals "imposes a substantial burden" on its religious exercise under RLUIPA.**

Government conduct that "impose[s] a significantly great restriction or onus upon [religious] exercise" may create a substantial burden in violation of RLUIPA. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). A land use regulation may impose a substantial burden if it exerts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (citing *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)).

Whether a land use regulation substantially burdens religious exercise is a highly fact-dependent question that requires examining the "totality of the circumstances."[6] *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 567 (2023). "[D]etermining whether a burden is substantial . . . is ordinarily an issue of fact." *Acad. of Our Lady of Peace v. City of San Diego*, No. 09CV962-WQH-AJB, 2010 WL 1329014, at *11 (S.D. Cal. Apr. 1, 2010) (quoting *World Outreach Conf. Ctr.*, 591 F.3d at 539)).

Here, MW has pleaded sufficient facts to plausibly show that the City has imposed a substantial burden on MW's religious exercise by denying its COO. Under the City's

---

[6]  Indeed, cases cited by the City underscore that a substantial burden analysis is a fact-specific inquiry that requires examination of a complete record. *See New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 599 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 567 (2023) (appeal of grant of summary judgment); *San Jose Christian*, 360 F.3d at 1027 (same); *Scot. Rite Cathedral Ass'n of Los Angeles*, 156 Cal. App. 4th at 114 (appeal of denial of writ of administrative mandamus).

demands, MW would be completely prohibited at its current location from distributing food and beverages to homeless individuals who come to its doors, a service that MW believes it has a "religious duty" to perform.  Compl. ¶¶ 4, 8, 27, 31-32, 38.  The City has also threatened to fine and criminally prosecute MW unless it ceases this practice.  *Id*. ¶¶ 3, 13, 31, 39.  This conduct is sufficient to establish a "substantial burden" on religious exercise in violation of RLUIPA.  *See Johnson*, 23 F.4th at 1215-16 (noting that "government action that threatens 'punishment[] to coerce a religious adherent to forgo her or his religious beliefs'" may amount to a substantial burden) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005)); *see also Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972) (holding that a "threat of criminal sanction[] to perform acts undeniably at odds with fundamental tenets of their religious beliefs" burdened religious exercise).

The City's decision to deny MW's COO and to threaten monetary and criminal consequences is not a "mere inconvenience," as the City argues.  Mot. at 12, 13.  Rather, the City has inflicted "substantial pressure" to compel MW to modify its behavior by ceasing to perform "act[s] of charity in providing . . . food and beverage items to the poor and homeless persons."  Compl. ¶8.  In banning MW's practice, the City imposes a substantial burden on MW's religious exercise.  *See Guru Nanak*, 456 F.3d at 988; *Greene*, 513 F.3d at 988 (holding that "an outright ban on *a particular religious exercise* is a substantial burden on that religious exercise") (emphasis added).

As discussed earlier, the City's assertion that there is no substantial burden on MW's religious exercise because food and drink distribution is "merely incidental" to MW's operations, Mot. at 12, is both legally and factually incorrect.  *See* Sec. III.A *supra*.  The City's argument ignores the plain language of RLUIPA, which expressly protects "any" religious exercise regardless of whether it is "compelled by, *or central to*, a system of religious belief."  42 U.S.C. § 2000cc-5(7) (emphasis added).  It is therefore irrelevant how "central" food distribution is to MW's religious beliefs in assessing whether the City's conduct has substantially burdened religious exercise in violation of

13

RLUIPA.  *See also First Lutheran Church,* 326 F.Supp.3d at 761-62 (holding that 20-person capacity limitation and "No Trespassing" sign requirement imposed a substantial burden in violation of RLUIPA on church's religious exercise because it interfered with efforts to assist homeless persons).  In any event, the Complaint contains ample facts establishing that food distribution to homeless persons is an important part of MW's religious exercise and is not "merely incidental."  Compl. ¶¶4, 27, 42.  And MW's facts must be accepted as true, and all reasonable inferences drawn in favor of MW, on a motion to dismiss.  *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).

Further, although not required at the pleading stage, MW alleges that it lacks readily available alternatives and that it is effectively precluded from changing locations.[7]  For example, MW alleges that moving locations would be "impossible" due to the costs and unlikelihood of finding a landlord willing to rent to an organization that serves homeless individuals, and that it cannot relocate without experiencing significant uncertainty, delay, or expense, or otherwise violating its religious purpose.  Compl. ¶39.  These allegations further support plaintiff's substantial burden claim under RLUIPA.  *See New Harvest*, 29 F.4th at 602-04 (evidence that other available properties are unsuitable because of "size, configuration, safety, or current uses" can support substantial burden finding); *Int'l Church of Foursquare Gospel,* 673 F.3d at 1067 (finding evidence of lack of other suitable sites in the city to house the church's expanded operation supported substantial burden claim).

Moreover, MW has also plausibly alleged that the City could apply the same reasoning to deny any future COO applications, even if MW were to relocate.  In 2021, the mayor directed various staff and departments to identify a basis for removing MW

---

[7] While the City makes passing reference to "ready alternatives" as a factor in the substantial burden analysis, the City cites no case where a RLUIPA plaintiff was *required* to plead that it lacked adequate alternative locations to withstand a motion to dismiss.  Cases discussing the availability of alternative locations have done so in the context of summary judgement.  *See, e.g., New Harvest,* 29 F.4th at 603; *San Jose Christian Coll.*, 360 F.3d at 1035.

from its location, Compl. ¶74, and stated his intent to prevent homelessness-related issues "from happening *anyplace* else in the City," *id.* ¶102 (emphasis added). Accordingly, MW has plausibly alleged that "the City would [not] agree to provide a COO" to MW in any location. *Id.* ¶40; *see Guru Nanak*, 456 F.3d at 989 (reasoning that prior application denials "to a significantly great extent lessened the possibility that future [] applications would be successful").

The City has informed MW that it "will not entertain" any conditions short of MW shuttering its food and beverage service. Compl. ¶32. MW ceased distributing food and beverages outside of the office and moved this activity indoors in order to address the City's concerns, but these actions have not appeased the City. *Id.* ¶¶27-29, 112. The City's complete prohibition on allowing MW to feed homeless individuals at its Resource Center under any circumstances further supports MW's claim that the City has violated RLUIPA by imposing a substantial burden on its religious exercise. *See Guru Nanak*, 456 F.3d at 991 (upholding substantial burden finding in part because defendant refused to accept mitigation conditions offered by plaintiff or suggest what conditions it would accept to permit religious temple).

## IV.   CONCLUSION

MW's Complaint alleges sufficient facts plausibly showing (1) that its food and beverage distribution to homeless individuals is religious exercise protected by RLUIPA, and (2) that the City's denial of its COO application substantially burdens its religious exercise in violation of RLUIPA. Therefore, the City's motion to dismiss MW's RLUIPA claim should be denied.

Respectfully submitted,

Dated: May 9, 2023                                         FOR THE UNITED STATES:

E. MARTIN ESTRADA                                KRISTEN CLARKE
United States Attorney                                 Assistant Attorney General
                                                                        Civil Rights Division

1  DAVID M. HARRIS                          SAMEENA SHINA MAJEED
   Assistant United States Attorney         Chief, Housing and Civil Enforcement
2  Chief, Civil Division                    Section
                                            Civil Rights Division
3  RICHARD M. PARK
   Assistant United States Attorney         CARRIE PAGNUCCO
4  Chief, Civil Rights Section, Civil Division   Acting Deputy Chief, Housing and Civil
                                            Enforcement Section
5                                           Civil Rights Division
   /s/ Matthew Nickell
6  MATTHEW NICKELL
   Assistant United States Attorney         /s/ Noah Sacks
7  Civil Rights Section, Civil Division     NOAH SACKS
                                            Trial Attorney, Housing and Civil
8                                           Enforcement Section
                                            Civil Rights Division
9

10                                          /s/ Terrence Mangan
                                            TERRENCE MANGAN
11                                          Trial Attorney, Housing and Civil
                                            Enforcement Section
12                                          Civil Rights Division

13                                          *Attorneys for the United States of America*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the United States, certifies that this brief contains 5,120 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 9, 2023                    Respectfully submitted,

                                      /s/ Matthew Nickell
                                      MATTHEW NICKELL
                                      Assistant United States Attorney
                                      Civil Rights Section, Civil Division