UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                                    Date: June 8, 2023

Title: MICAHS WAY v. CITY OF SANTA ANA ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):     ORDER DENYING MOTION TO DISMISS [16]**

Before the Court is Defendant's Motion to Dismiss ("Mot.") (Dkt. 16). The Court heard oral argument on June 5, 2023. (Dkt. 35). For the reasons below, the Court DENIES Defendant's Motion.

**I.     Background**

This is an action for violation of the Religious Land Use and Institutionalized Persons Act and violation of the First Amendment to the United States Constitution. Complaint ("Compl.") (Dkt. 1).

**A.     Facts**

The following facts are drawn from Plaintiff Micah's Way's Complaint. At the Motion to Dismiss stage, we accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff.

This case involves an alleged violation of Micah's Way's statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Micah's Way is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES               Date: June 8, 2023

Page 2

"faith-based organization" that gets its name from the "'Micah Mandate' set forth in Micah 6:8 in the Bible," which requires followers "[t]o act justly, and to love mercy, and to walk humbly with your God." Compl. ¶ 5. Micah's Way performs its "Christian ministry" by following the teachings of Jesus Christ. *Id.* ¶ 4. Specifically, Micah's Way points to the words of Matthew 25:35-40, which state, "For I was hungry and you gave me something to eat, I was thirsty and you gave me something to drink …" *Id.*

As part of this ministry, Micah's Way provides impoverished and disabled individuals in Santa Ana with, among other things, (1) ID vouchers; (2) assistance in obtaining birth certificates; (3) mail collection; (4) hygiene materials; (5) clothing; (6) bus passes; (7) hotel/motel vouchers; (8) tuition assistance for children from poor families; (9) counseling; (10) delivery of food boxes to residents; (11) referrals to outreach services; and (12) onsite assistance for persons released at night from the Orange County jail. *Id.* ¶ 6. Micah's Way also engages in food distribution activities, delivering canned food to needy families and providing snacks and beverages to persons who come to their Resource Center. *Id.* ¶ 7. In early 2020, in response to the COVID-19 pandemic, Micah's Way began offering these snacks and beverages outdoors. *Id.* ¶ 57. Micah's Way's food distribution activities are an important part of its Christian ministry. *Id.* ¶ 42.

Micah's Way relocated to 1517 East Fourth Street in Santa Ana, California, in May 2016. *Id.* ¶ 51. After moving in, Micah's Way was inspected by a building inspector from the City of Santa Ana ("the City"). *Id.* ¶ 55. The President of Micah's Way's Board, Vaskin Koshkerian ("Koshkerian") was told by the building inspector that Micah's Way would receive a Certificate of Occupancy ("COO") if they successfully passed the inspection, which they did. *Id.* However, they did not receive a COO, and never separately applied for one. *Id.* ¶ 56.

Since then, Micah's Way has obtained a business license annually and made several improvements to its property. *Id.* ¶¶ 41, 55. Koshkerian was even told by the City's Code Enforcement Department Chief, Yvette Portugal ("Portugal"), that Micah's Way was doing "a good job." *Id.* ¶ 89. In March 2020, pursuant to health protocols necessitated by the COVID-19 pandemic, Micah's Way began administering its services outside the Resource Center. *Id.* ¶ 57.

Around the summer of 2020, shortly after the onset of the COVID-19 pandemic, a needle exchange program operated by the American Addiction Institute ("Needle

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES　　　　　　　　　　　　　　　　　Date: June 8, 2023

Page 3

Exchange") opened two doors down from Micah's Way. *Id.* ¶ 9. The City issued a COO to the Needle Exchange despite never issuing one to Micah's Way. The opening of the Needle Exchange was associated with increased neighborhood complaints of drug use, trespassing, and loitering. *Id.* ¶¶ 58-60, 64-67.

Even though Micah's Way had been operating without a COO for five years, the City cited them for operating without one on November 29, 2021. *Id.* ¶ 10. The City also cited Micah's Way for distributing food and beverages in an alleged violation of the applicable zoning ordinance. *Id.*

Before the City issued the citation, then-Santa Ana Mayor Vincent Sarmiento directed top City officials such as the City Manager, the Chief of Police, and the City Attorney to "assess short-term and long-term options" to remedy what he called the "acute effect" that Micah's Way and the Needle Exchange were having on the neighborhood. *Id.* ¶¶ 65, 67. The mayor, who lives down the street from Micah's Way, justified his position with "personal experience" based on a break-in he experienced at his home. *Id.* ¶ 11. These top City officials then instructed their subordinates to "devise whatever means they could come up with to compel Micah's Way and the Needle Exchange to move out of the 4th Street neighborhood or, at the very least, to severely curtail their operations." *Id.* ¶ 74.

Pursuant to these instructions, the Santa Ana Police Department set up a stakeout directly across from Micah's Way and took photographs of homeless individuals standing in line outside the Resource Center. *Id.* ¶ 75. Police officers further stopped three individuals who had been seen "eating pastries and drinking coffee" outside the Resource Center and interrogated them as to where they had obtained the pastries and coffee. *Id.* ¶¶ 76-77.

Further, the Executive Director of the City's Planning and Building Agency, Alvaro Nunez ("Nunez"), personally summoned one of the City's Code Enforcement Officers, Cesar Jimenez ("Jimenez"), to his office. *Id.* ¶ 79. Nunez instructed Jimenez to administratively cite Micah's Way. *Id.* Jimenez had no previous knowledge of Micah's Way or of any problems associated with Micah's Way's operations, had conducted no investigation, had never spoken to anyone at Micah's Way, and had never laid eyes on Micah's Way's Resource Center. *Id.* ¶ 81. Despite this, Jimenez issued the citation. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                                            Date: June 8, 2023

Page 4

The day after the citation was issued, the City and various members from the Saddleback View Neighborhood Association met in a public forum to discuss, among other things, complaints about "transients," Micah's Way and the Needle Exchange, and the City's efforts to "identify[] certain businesses [] to target with Code Enforcement so [they] won't be attractive to homeless people." *Id.* ¶ 11. During the meeting, Mayor Sarmiento stated that Micah's Way "shouldn't be right up against single-family homes and neighborhoods," and that it was his intent to "correct what's happening here, but also prevent it from happening anywhere else in the city." *Id.* ¶¶ 102-03.

Micah's Way applied for a COO in December 2021, but was denied in January 2022. *Id.* ¶ 12. Micah's Way reapplied in February 2022, but was again denied on the grounds that Micah's Way's food distribution activities were "not permitted in the Professional district." *Id.* In March 2022, Micah's Way informed the City that its refusal to grant the COO was a violation of RLUIPA. *Id.* ¶ 107. In response, the City informed Micah's Way that it would "take all appropriate action," including the "issuance of administrative fines, criminal prosecution and/or civil remedies such as injunctions and penalties," if Micah's Way continued to distribute food. *Id.* ¶ 13.

Micah's Way appealed the denial of their second COO application, and an appeal hearing was held in August 2022. *Id.* ¶ 14. The Hearing Officer granted Micah's Way's appeal on the grounds that, in denying Micah's Way's COO application, the City had failed to comply with the provisions of RLUIPA. *Id.* ¶ 14. Following the hearing, Micah's Way met with City officials and offered to return to its pre-pandemic practice of providing food and drink indoors only. *Id.* ¶ 112. The City rejected this offer. *Id.* ¶ 113. Micah's Way reverted to its pre-pandemic procedures anyway and currently distributes food and beverages inside its Resource Center. *Id.* ¶ 29.

Micah's Way informed the City in writing of this policy change. *Id.* ¶ 114. On January 11, 2023, the City informed Micah's Way that it would "not entertain" approving Micah's Way's COO application unless Micah's Way unconditionally agreed to a new set of conditions. *Id.* These conditions would prohibit Micah's Way from, among other things, (1) providing food or beverages of any kind to any clients; (2) engaging in general outreach and resource services for poor and homeless individuals; and (3) "advertising, marketing, or engaging in any other communication … related to the distribution or handing out of food and beverages at the Resource Center." *Id.* ¶ 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                         Date: June 8, 2023

Page 5

To this day, the City continues to require a total ban on any food distribution by Micah's Way. *Id.* ¶ 31, 115.

### B.     Procedural History

Plaintiff filed its Complaint on January 1, 2023 ("Compl.") (Dkt. 1). Defendant filed its Motion to Dismiss on January 13, 2023 ("Mot." Or "Motion") (Dkt. 16). Plaintiff opposed the Motion on May 8, 2023 ("Opp.") (Dkt. 23). Defendant replied on May 22, 2023 ("Reply") (Dkt. 26).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES				Date: June 8, 2023

Page 6

### III.  Discussion

The City moves to dismiss Micah's Way's claims, arguing that Micah's Way fails to state a claim under 42 U.S.C. § 2000cc-2(a) for violation of RLUIPA, and that Micah's Way further fails to state a claim under 42 U.S.C. § 1983 for violation of the Free Exercise Clause of the First Amendment. The Court addresses each argument in turn.

### A.  Claim for Violation of RLUIPA

To state a claim for relief under RLUIPA, Micah's Way bears the burden of showing that the disputed activity was (1) an "exercise of religion" that was (2) "substantially burden[ed]" by the City. 42 U.S.C. § 2000cc-2(b). The allegations in the Complaint satisfy Micah's Way's burden on both elements at this stage in the proceedings.

#### i.  Micah's Way Plausibly Alleges that its Food Distribution Activities are "Religious Exercise" under RLUIPA.

RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Micah's Way alleges that its food distribution activities are part of its religious exercise. The City argues first that Micah's Way's activities are "purely administrative and … not religious in nature," and second that Micah's Way's food distribution is "merely an incidental use of minor significance." Opp. at 10. Neither argument is persuasive.

The City argues that Micah's Way's "administrative activities" are analogous to "commercial activities," which *Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles* held are unprotected under RLUIPA. 156 Cal.App.4th 108, 118 (2007); Mot. at 9. However, this analogy is dubious at best— "commercial activities" are those in pursuit of profit. It is not immediately clear to the Court what connection for-profit activities have with "administrative" ones. Here, Micah's Way is a "*non-profit* faith-based organization," and so its activities are not "commercial," regardless of whether they can be described as "administrative." Compl. ¶ 5 (emphasis added).

Further, the City's reliance on *Scottish Rite* is misplaced. As Micah's Way makes clear, the "commercial activities" in question in *Scottish Rite* were conducted by "a purely commercial entity" that the Cathedral leased its space to for boxing events. Opp. at 11. The Cathedral argued that RLUIPA extended to its tenant's nonreligious activities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                                              Date: June 8, 2023

Page 7

solely because the profit from those activities was supporting the Cathedral, which the court rejected. *Scottish Rite*, 156 Cal.App.4th at 119. Here, not only are Micah's Way's activities *not generating profit*, but they bear a much closer relationship to Micah's Way's religious purpose than did *Scottish Rite*'s boxing matches.

The City next argues that Micah's Way's food distribution activities are "merely … incidental" and "of minor significance." Mot. at 10. Such an argument arbitrarily assigns different weight to acts of charity. All of Micah's Way's activities are in pursuit of the same goal: to express their religious beliefs by rendering "charitable services" to those in need. Compl. ¶ 7. There is nothing to suggest that providing ID vouchers is any more or less charitable than providing food.

Moreover, any inquiry into whether Micah's Way's food distribution services are "merely incidental" is prohibited by case law. RLUIPA protects "*any* exercise of religion, whether or not … *central to* … religious belief." 42. U.S.C. § 2000cc-5(7)(A). In determining whether a particular practice is "religious exercise," "we are forbidden from evaluating the centrality of a religious practice or belief." *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022). For this reason, the City's arguments that Micah's Way's food distribution is "merely incidental" cannot be considered.

Here, Micah's Way has pled sufficient facts to plausibly allege that its food distribution activities are religious exercise. Micah's Way points both to scripture and a general religious duty to perform food distribution as evidence that the activity is religious exercise. Micah's Way performs its charitable activity pursuant to the teachings and words of Jesus Christ, most notably, "For I was hungry and *you gave me something to eat*…" Compl. ¶ 4. Micah's Way has further alleged that food distribution is "an important part of its Christian ministry," and considers its rendering charitable services to the impoverished part of the "religious path that [its] members have followed." *Id.* ¶¶ 6, 42. Distributing food is certainly one of those charitable services, so it plausibly falls within RLUIPA's broad protection of religious exercise.

### ii. Micah's Way Plausibly Alleges that the City's Ban on its Food Distribution Activities Constitutes a "Substantial Burden" on its Religious Exercise Under RLUIPA.

The RLUIPA does not define what constitutes a "substantial burden," but the Ninth Circuit has defined it as a burden which imposes a "significantly great restriction or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                                Date: June 8, 2023

Page 8

onus upon religious exercise." *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022). Such a restriction exists when a "governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. Of Sutter,* 456 F.3d 978, 988 (9th Cir. 2006) (quoting *Thomas v. Review Bd. Of the Ind. Emp't Sec. Div.,* 450 U.S. 707, 717-18 (1981)).

The City offers a different standard, namely a totality of the circumstances analysis, considering factors including: (1) whether the government's reasons for denying an application were arbitrary, such that they could easily apply to future applications by the religious group; (2) whether the religious group has ready alternatives available to it or whether the alternatives would entail substantial uncertainty, delay, or expense; and (3) whether the religious group was precluded from using other sites in the city. *See San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035-1036 (9th Cir. 2004); *Guru Nanak*, 456 F.3d at 989; *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067, 1070 (9th Cir. 2011); *New Harvest Christian Fellowship*, 29 F.4th at 602. Micah's Way plausibly alleges a substantial burden under either standard.

Micah's Way has pled facts sufficient to plausibly allege the City has put "substantial pressure" on it to "modify [its] behavior and to violate [its] beliefs." *See Guru Nanak*, 456 F.3d at 988. The City has represented to Micah's Way that continued distribution of food will be met with "issuance of administrative fines, [and/or] criminal prosecution," and continues to deny Micah's Way a COO unless it agrees to cease food distribution *and* charitable services for poor and homeless individuals generally. *Id.* ¶¶ 13, 32. In doing so, the City has plausibly put pressure on Micah's Way to modify its behavior and violate its beliefs by abandoning its charitable practices.

Under the City's totality of the circumstances standard, Micah's Way still plausibly alleges a substantial burden. First, Micah's Way has pled sufficient facts to plausibly show that the City's decision was arbitrary. Not only was Micah's Way misled to believe that they would get a COO upon passing a building inspection and assured by the Code Enforcement Department Chief that they were doing a "good job," but the City waited five years to cite Micah's Way for operating without a permit they never had in the first place. *Id.* ¶¶ 55, 89. Further, the citation was issued pursuant to an order from the top of the City government to "devise whatever means they could come up with" to get rid of Micah's Way. *Id.* ¶ 74. The sudden, coordinated effort to target Micah's Way makes it plausible that the City's decision was arbitrary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00183-DOC-KES                                          Date: June 8, 2023

Page 9

Second, the facts pled plausibly show that Micah's Way had no alternatives readily available to it, or at least none that would not entail "substantial uncertainty, delay, or expense." Micah's Way had already returned to its pre-pandemic practice of only distributing food indoors, and so the only remaining alternative available to Micah's Way is relocation. *Id.* ¶ 29. As a non-profit organization, Micah's Way likely could not afford to move to a new location. *Id.* ¶ 5. Even if they could, Mayor Sarmiento's statement that he intended to prevent Micah's Way from operating "anywhere else in the city" makes relocation uncertain at best *Id.* ¶ 102. Finally, considering this same remark by the Mayor, it is plausible to conclude that Micah's Way would likely be precluded from using other sites in the city. *Id.*

Accordingly, the Court DENIES Defendant's Motion as to this claim.

### B. Micah's Way Plausibly Alleges that the City has Violated the Free Exercise Clause of the First Amendment.

In stating a claim for violation of the Free Exercise Clause, Micah's Way carries the burden of showing that "a government entity has burdened [its] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (quoting *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022)). A law is of "general applicability" if "it does not aim to 'infringe upon or restrict parties because of their religious motivation,' and if it does not 'in a selective manner impose burdens only on conduct motivated by religious belief[.]'" *San Jose Christian College*, 360 F.3d at 1031 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 543 (1993)).

Construed in a light most favorable to Micah's Way, the facts pled are sufficient to plausibly state a claim for violation of the Free Exercise Clause. Micah's Way has alleged that the City's prohibition on its food distribution activities, a "sincere religious practice," is inconsistent with treatment of other businesses in the Professional district, which "[offer] refreshments to the clients or customers who visit their offices." Compl. ¶ 30. This is clear selective enforcement of the City's zoning law targeting only conduct motivated by religious belief.

Micah's Way alleges numerous facts beyond this that emphasize the selective enforcement of the zoning law. These include the Police Department's alleged surveillance of Micah's Way and alleged harassment of its clients, the alleged lack of an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:23-cv-00183-DOC-KES | Date: June 8, 2023 |
| | Page 10 |

investigation prior to the original citation being issued against Micah's Way, and the alleged comments by Mayor Sarmiento that the City was "targeting" Micah's Way "with Code Enforcement so [they] won't be attractive to homeless people." *Id.* ¶¶ 11, 75-81.

Accordingly, the Court DENIES Defendant's Motion as to this claim.

### IV. Disposition

For the reasons stated above, the Court **DENIES** Defendant's Motion (Dkt. 16).

The Clerk shall serve this minute order on the parties.

| | |
|---|---|
| MINUTES FORM 11 | Initials of Deputy Clerk: kdu |
| CIVIL-GEN | |